1  ROBERT M. YASPAN, SBN 051867
DEBRA R. BRAND, SBN 162285
2  LAW OFFICES OF ROBERT M. YASPAN
21700 Oxnard Street, Suite 1750
3  Woodland Hills, California 91367
Telephone: (818) 905-7711
4  Facsimile: (818) 501-7711

5
*Attorney for Creditor Golf View Lane Limited Partnership*
6

7

8  **UNITED STATES BANKRUPTCY COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION**

10 | In re | ) | Chapter No.: 7 |

11 | VALLEY ENTERPRISES T.S. INC., | ) | Case No.:  1:20-bk-11784-MB |

12 | | ) |

13 | Debtor. | ) | OPPOSITION TO DEBTOR VALLEY
ENTERPRISES, T.S. INC.'S OBJECTION TO
14 | | ) | GOLF VIEW LANE LIMITED
PARTNERSHIP'S PROOF OF CLAIM NO. 8
15 | | ) |

16 | | ) |

17 | | ) | Date:  September 22, 2021
Time: 11:00 a.m.
18 | | ) | Place: Courtroom 303
21041 Burbank Boulevard
19 | | ) | Woodland Hills, California 91367
Hearing to be held via ZOOM.gov
20 | | ) |

21 | | ) |

22

23 _____

24     Creditor Golf View Lane Limited Partnership ("Creditor" or "Golf View"). submits this

25 Opposition to the Debtor's Object to Golf View Lane's Limited Partnership's Proof of Claim

26 No. 8 ("Objection") as follows:

27

28

1

TABLE OF CONTENTS

I.     INTRODUCTION AND STATEMENT OF FACTS REGARDING
       THE OBSTRUCTION OF VETS.............................................  2

II.    DEBTOR HAS THE BURDEN TO SHOW HE HAS STANDING TO
       OBJECT TO PROOFS OF CLAIMS.......................................  5

       A. DEBTOR CANNOT OBJECT TO CLAIM WITHOUT
          LEAVE OF COURT AND ONLY AFTER TRUSTEE
          REFUSES TO DO SO...............................................  5

       B. DEBTOR HAS NO STANDING TO OBJECT TO
          PROOFS OF CLAIM BECAUSE IT HAS NOT MET
          ITS BURDEN OF SHOWING THAT THE ESTATE IS
          SOLVENT AND THE DEBTOR WILL RECOVER ANY
          RETURN FROM THE ESTATE.....................................  6

III.   EVEN IF IT WERE DETERMINED THAT VETS HAS
       STANDING, THE OBJECTION TO CLAIM MUST FAIL
       AS IT LACKS THE REQUISITE EVIDENTIARY SUPPORT............  7

IV.    RELEVANT STATEMENT OF FACTS RELATING
       TO THE PROOF OF CLAIM...........................................  9

V.     LEGAL STANDARDS RELATING TO VETS' CLAIM..................  15

       A.   THE LIQUIDATED DAMAGES PROVISION WAS WAIVED
            WHEN VETS ACCEPTED THE EXTENSION .......................  15

       B.   EVEN IF THE LIQUIDATED DAMAGE PROVISION WAS
            NOT WAIVED, THERE IS A DISPUTED FACT ISSUE
            REGARDING THE CHARACTERIZATION OF THE $50,000 ......  15

       C.   WHICH CODE SECTION REGARDING DAMAGES IS
            APPLICABLE IS A TRIABLE ISSUE OF FACT.....................  17

       D.   EVEN IF CALIFORNIA CIVIL CODE SECTION 3343
            APPLIES GOLF VIEW WOULD BE ENTITLED
            TO ITS DAMAGES..................................................  17

VI.    IF THE COURT IS NOT INCLINED TO OVERRULE THE
OBJECTION FOR LACK OF STANDING, OR FAILURE
TO PROVIDE EVIDENTIARY SUPPORT, THEN THE
OBJECTION SHOULD BE DENIED AND/OR DISMISSED
FOR FAILURE TO FOLLOW BANKRUPTCY RULE 7056
AND LOCAL RULE 7056-1…………………………………..    20

VII.    IF THE COURT IS NOT INCLINED TO OVERRULE THE
OBJECTION FOR LACK OF STANDING, FAILURE
TO PROVIDE EVIDENTIARY SUPPORT, OR FAILURE
TO FOLLOW BANKRUPTCY RULE 7056 AND LOCAL
RULE 7056-1, THEN GOLF VIEW REQUESTS AN
EVIDENTIARY HEARING WHETHER ITS CLAIM
SHOULD BE ALLOWED…………………………………..    20

VIII.    CONCLUSION…………………………………………    21

TABLE OF AUTHORITIES

In re Bakke,
243 B.R. 753 (Bankr. D. Ariz. 1999)............................................................ 5,6

Broady v. Miler (In re Broady),
96 B.R. 221 (Bankr. E.D. Mo. 1988) ........................................................... 7

Channell v. Anthony,
58 Cal. App. 3d. 290................................................................................ 18

Cheng v. K&S Diversified Investments, Inc.
308 B.R. 448 (B.A.P. 9th Cir., 2004)........................................................... 6

County of Stanislaus v. Pacific Gas & Electric Co., Case No.
CV-F-93-5866-OWW,
1995 U.S. Dist. LEXIS 21411, at *22-23 (E.D. Cal. Dec. 18, 1995) ..................... 9

Diamant v. Kasparian (In re Southern Cal. Plastics, Inc.),
165 F.3d 1243 (9th Cir.1999)..................................................................... 8

Dellamarggio v. B-Line, LLC (In re Barker),
306 B.R. 339 (Bankr. E.D. Cal. 2004).......................................................... 7

E.F. Hutton & Co., Inc. v. Hadley,
901 F.2d 979 (11th Cir. 1990).................................................................... 5

In re El San Juan Hotel,
809 F.2d 1515 (1st Cir. 1987).................................................................... 7

Fragale v. Faulkner,
110 CA4th 229 (2003)............................................................................. 19

In re Garner,
246 B.R. 617 (B.A.P. 9th Cir. 2000)............................................................ 7,8

Horowitz v. Noble,
79 Cal. App. 3d. 120 (Ct. App. 1978)........................................................... 16

Kapp v. Naturelle, Inc., (In re Kapp),
611 F.2d 703 (8th Cir. 1979)..................................................................... 7

Kieffer v. Riske (In re Kieffer-Mickes Inc.),
226 B.R. 204 (B.A.P.8th Cir. 1998).............................................................. 7

Las Palmas Assocs. v. Las Palmas Center Assocs.,
235 CA3d 1220 (1991)............................................................................. 18

1

2

3

In Re Lundell,
223 F. 3d 1035 (9th Cir. 2000.)............................................................... 21

4

Max Recovery v. Than (In re Than),
215 B.R. 430 (B.A.P. 9th Cir. 1997) ....................................................... 5

5

6

McGuirl v. White,
318 U.S. App. D.C. 238 (D.C. Cir. 1996)................................................ 7

7

8

McMunigal v. Bloch,
No. C 10-02765 (N.D Cal. Dec. 23, 2010). ............................................ 8

9

10

M/V American Queen v. San Diego Marine Construction Corp.,
708 F.2d 1483 (9th Cir. 1983)................................................................ 9

11

Oregon Advocacy Ctr. v. Mink,
322 F.3d 1101 (9th Cir. 2003)................................................................ 6

12

13

Stout v. Turney,
22 C3d 718 (1978) ............................................................................. 18,19

14

15

United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,
517 U.S. 544 (1996)............................................................................. 6

16

Wolkowitz v. Redland Insurance Co.,
112 Cal.App. 4th 154 (2003)................................................................. 21

17

18

19

20

21

22

23

24

25

26

27

28

CODES AND STATUTES

Fed.R.Bankr.P. 3001(f)………………………………………………….    8

Bankruptcy Rule 9013(c) ……………………………………………….    20

Local Bankruptcy Rule 7056-1…………………………………………..    20

California Civil Code Sections 3307 ……………………………………    15

California Civil Code Sections 3343 …………………………………… 17,18.19,20

BARRY RUSSELL, BANKRUPTCY EVIDENCE MANUAL § 301.13 (1999)…..    8

## I.    INTRODUCTION AND STATEMENT OF FACTS REGARDING THE OBSTRUCTION OF VETS

The Objection is fatally flawed.  Debtor Valley Enterprises T.S. Inc. ("Debtor" or "VETS") improperly filed the Objection since it does not have standing to bring such and has completely failed to provide any evidentiary support that would allow the filing of this Objection or establish any of the grounds for it.

In fact, VETS and Pasco have consistently attempted to deceive not just this bankruptcy Court, but the bankruptcy court sitting in the case of *In re Golf View Lane Limited Partnership*, Central District of California – Northern Division, Case No. 9:19-bk-10291-DS ("Golf View Bankruptcy") filed on February 22, 2019 and an adversary proceeding filed on October 16, 2019 entitled *Golf View v. Pinnacle, et al.*, as Case No. 9:19-ap-01058-DS filed against, among others, VETS and Pasco ("Golf View Adversary").  (Request for Judicial Notice, Exhibits A and B, respectively; Trevor Dec., paragraphs 2 and 22.

This VETS bankruptcy was originally filed as a Chapter 11 bankruptcy on October 5, 2020[1] (Request for Judicial Notice filed concurrently herewith ("RJN"), Exhibit C, Docket No. 1).   Jose Pasco has stated he is the sole owner and shareholder of VETS (Declaration of Jose Pasco ("Pasco Dec.", paragraph 1).

However, on December 4, 2020, in the Golf View Adversary, Pasco made his first attempt to have $50,000 that was deposited into an escrow with Golf View released to him when he filed his *Motion for an Order to release Defendant's Funds Sequestered in Plaintiff's Attorneys' Trust Account; Order for Modification of March 25, 2020 Order to Release Defendant's Funds Sequestered in Plaintiff's Attorneys' Trust Account; Order to Show Cause for Continued Sequestration of Defendant's Funds* (RJN, Exhibit B, Docket No. 51) ("Release Motion").  Now, in this Objection, Pasco once again has attempted to grab the disputed funds

---

[1] Another Chapter 11 case was apparently filed by VETS on September 17, 2020, as Case No. 1:20-bk-11684-MB and dismissed on September 30, 2020.  (Brand Dec., paragraph 2).

between Golf View and VETS (Pasco Dec., paragraph 4).

Six days after filing the Release Motion in the Golf View Adversary, on December 10, 2020, in the instant bankruptcy, Pasco contradicted his claim of any such ownership rights to the funds by executing amended schedules on behalf of VETS that stated in the *Statement of Financial Affairs* No. 77, under "Other property of any kind not already listed"': Golf View Lane Limited Partnership – Escrow Deposit $50,000." (RJN, Exhibit H).   Thereafter, the Court converted the VETS bankruptcy to a Chapter 7 on December 10, 2020 and appointed Diane Weil as Chapter 7 Trustee ("Chapter 7 Trustee").   (RJN, Exhibit D).

Ultimately, the Release Motion was withdrawn prior to the hearing by Pasco.  (RJN, Exhibit B, Docket Nos. 71 and 72).

It now appears that VETS is attempting to claim that there is a surplus estate so VETS can have standing to file this Objection.  However, since VETS has failed to provide the complete analysis and amounts of claims, the Court simply does not have sufficient evidence to support a finding of a surplus estate.

Further, VETS has failed to comply with the Chapter 7 Trustee's investigation and has obstructed the ability of the Chapter 7 Trustee to proceed with her duties to determine the assets of the estate.  In fact, as of the date of the filing of the Opposition, VETS has failed to attend multiple continued 341a hearings, such that a Rule 2004 examination was scheduled for Pasco. Pasco failed to attend that Rule 2004 examination and the Chapter 7 Trustee filed a motion for a Rule 2005 examination.  (RJN, Exhibit C, Docket No. 148).  After the hearing on the Rule 2005 examination was continued (RJN, Exhibit C, Docket No. 165), a Rule 2004 examination finally proceeded on August 25, 2021.  However, after Pasco answered a minimal amount of preliminary background questions, he stated that he could not proceed because he was experiencing Covid-like symptoms and, as such, the examination was continued to September 9, 2021.  As such, neither the Trustee or the Court have the information it needs to determine the

assets of the estate. (Declaration of Debra R. Brand ("Brand Dec."), paragraph 3).

Additionally, without the Trustee's authority other improper motions were brought by Pasco included the filing on May 27, 2021 of *Defendants Jose Pasco's & Valley Enterprises TS, Inc.'s Motion for Summary Judgment and/or Partial Summary Judgment* in the Golf View Adversary ("Summary Judgment Motion"). The Summary Judgment Motion did not distinguish between VETS and Pasco and lumped them both together in their arguments and alleged evidence. (Brand Dec., paragraph 4).  In his declaration re this Motion, Pasco attaches a portion of the Summary Judgment Motion as Exhibit 2, but as discussed in the concurrently filed evidentiary objections to Pasco's declaration, the exhibit is hearsay and has no evidentiary support.

Golf View filed its Opposition to the Summary Judgment Motion on June 22, 2021.  One of the grounds of the Opposition was the lack of authority to file the Motion on behalf of VETS. Also on June 22, 2021, the Chapter 7 Trustee filed an Opposition to the Motion that not only opposed the filing of the Motion by VETS, but also withdrew it on behalf of the VETS Estate (RJN, Exhibit E). (Brand Dec., paragraph 4).  As such, the Summary Judgement Motion has never been considered by the Court in the Golf View Adversary and could not have any evidentiary value herein.

Since the withdrawal of the wrongfully filed Summary Judgement Motion was not filed until the date the Opposition was due, Golf View addressed all of the arguments raised by VETS and Pasco.  Since the arguments and claims were conflated and everything was lumped together, Golf View had to waste dozens of hours responding to a specious and unnecessarily complicated Summary Judgment Motion. (Brand Dec., paragraph 5).

After the Chapter 7 Trustee withdrew the Summary Judgment Motion in the Golf View Adversary, Golf View filed an *ex parte* application to take Pasco's remaining motion for summary judgment off calendar because of the legal morass for the Court to try to determine the

claims solely of Pasco and sorting through all of the documents to determine whether the argument put forth by VETS or Pasco. (RJN, Exhibit B, Docket No. 101). The Court granted the *ex parte* application filed by Golf View on June 28, 2021 and the hearing was vacated (RJN, Exhibit B, Docket Nos. 104 and 106) (Brand Dec., paragraph 6).

Pasco has also tried to prevent discovery in the Golf View Adversary by filing meritless objections to subpoenas that are not in conformity with the Code. (Brand Dec., paragraph 7).

Now, once again without standing, VETS filed this Objection without seeking the authority of the Chapter 7 Trustee or the Court. Further, VETS has failed to provide the evidence it needed to support its claims and the Objection should simply be overruled on both grounds.

## II.    DEBTOR HAS THE BURDEN TO SHOW HE HAS STANDING TO OBJECT TO PROOFS OF CLAIMS

VETS must show he has standing to object to proofs of claim filed in the instant case. As the court in Max Recovery v. Than (In re Than), 215 B.R. 430 (B.A.P. 9th Cir. 1997) recognized, the burden to establish standing remains with the party claiming that standing exists. See, E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 984 (11th Cir. 1990).

### A.  DEBTOR CANNOT OBJECT TO CLAIM WITHOUT LEAVE OF COURT AND ONLY AFTER TRUSTEE REFUSES TO DO SO

The leading case addressing the issue of a debtor's standing to object to claims following appointment of a trustee states:

"The Court finds and concludes on this record that the line of cases which hold that when a trustee has been appointed, the debtor or other creditors do not have standing to object to the claims of another creditor unless specifically granted by the Bankruptcy Court are both well reasoned and on point in this particular case. *See In re Sun OK Kim*, 89 B.R. 116, 117-18 (Bankr. D. Haw. 1987); *First Bank Billings v. Feterl Mfg. Co. (In Re Parker Montana Co.),* 47 B.R. 419, 421 (Bankr. D. Mont. 1985); *Werth v. First Interstate Bank of Denver, N.A. (In re Werth),* 54 B.R. 619, 622 (Bankr. D. Col. 1985); *International Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Ludwig Honold Mfg Co. (In re Ludwig Honold Mfg. Co.),* 30 B.R. 790, 792 (Bankr. E.D. Pa. 1983); and 4 Collier on Bankruptcy, P502.02[2] (d) (Matthew Bender, 15th Ed. Revised 1996); *see also In re Morpheus Lights, Inc.* 228 B.R. 449, 453 (Bankr.

E.D. Cal. 1998)(chapter 11 case, stating general rule and applying rule to a general creditor in case where unsecured creditors committee appointed)."

In re Bakke, 243 B.R. 753, 755 (Bankr. D. Ariz. 1999).

The *Bakke* court further held that to obtain standing to object to another creditor's claim in a chapter 7 case, the objecting party must first request the trustee to object to the claim, the trustee must refuse to object to the claim, and the Bankruptcy Court may then authorize the creditor or debtor to proceed. Sun OK Kim, supra at 118; and Parker Montana, supra at 421. Debtor has not provided any evidence of any such request much less any alleged refusal by the Trustee and he certainly has not requested approval from this Court to do so.

Rather, the Debtor argues without any evidence that it has been 8 months since the converted into the Chapter 7 and the Trustee has not filed an objection. However, What the Debtor fails to admit that in the eight months, it has not attended multiple 341a hearings and its principal has failed to attend a Rule 2004 examination and when he finally did attend on August 25, 2021, Mr. Pasco claimed to be ill, and he could not testify. The Rule 2004 examination is now continued to September 9, 2021. (Brand Declaration, paragraph 3). Debtor and its principal have prevented the Chapter 7 Trustee from her ability to do her investigation regarding the assets and liabilities and cannot file this claim when the Debtor has provided minimal cooperation with the Trustee.

**B.    DEBTOR HAS NO STANDING TO OBJECT TO PROOFS OF CLAIM BECAUSE IT HAS NOT MET ITS BURDEN OF SHOWING THAT THE ESTATE IS SOLVENT AND THE DEBTOR WILL RECOVER ANY RETURN FROM THE ESTATE**

In Cheng v. K&S Diversified Investments, Inc. (In re Cheng), 308 B.R. 448, 454 (B.A.P. 9th Cir., 2004), Judge Klein has opined ""[o]rdinarily, the trustee or some party in interest, other than the debtor, prosecutes claim objections. A debtor, in his individual capacity, lacks standing to object unless it demonstrates that it would be "injured in fact" by the allowance of the claim". United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S.

544, 551, 134 L. Ed. 2d 758, 116 S. Ct. 1529 (1996); <u>Oregon Advocacy Ctr. v. Mink</u>, 322 F.3d 1101, 1108-09 (9th Cir. 2003); <u>Dellamarggio v. B-Line, LLC (In re Barker)</u>, 306 B.R. 339, 346 (Bankr. E.D. Cal. 2004).

Typically, a Debtor has no standing to object to claims or orders relating to them because the debtor does not have a pecuniary interest in the distribution of the assets of the estate. <u>Kapp v. Naturelle, Inc., (In re Kapp)</u>, 611 F.2d 703, 706-707 (8th Cir. 1979); <u>Broady v. Miler (In re Broady)</u>, 96 B.R. 221, 223 (Bankr. E.D. Mo. 1988) (citing Kapp). This is because an objection to a proposed distribution only affects how much each creditor will receive and does not affect the debtor's rights.   <u>In re El San Juan Hotel</u>, 809 F.2d 1515, 154-155 (1st Cir. 1987).  There may be and when in can be shown that if the contested claims are disallowed, there will be a surplus. <u>Kapp</u>, <u>supra</u> at 707; <i>See also</i> <u>McGuirl v. White</u>, 318 U.S. App. D.C. 238, 86 F.3d 1232, 1234 (D.C. Cir. 1996); <u>San Juan Hotel</u>, <u>supra</u> at 155, n. 6; <u>Kieffer v. Riske (In re Kieffer-Mickes Inc.)</u>, 226 B.R. 204, 208-209 (B.A.P.8th Cir. 1998).

However, Debtor has not made any showing that even if all the claims he has objected to are zeroed out a surplus will exist.   Debtor has not provided any evidence about the secured claims or other liens on its properties, much less any admissible evidence of the value of the property.  (Pasco Dec., paragraphs 8 and 10).  Debtor fails to provide any admissible evidence regarding the secured claims, the priority claims, or even confirm that the unsecured claims list is complete.  Thus, Debtor has not met his burden as it has failed to show that the Estate could in fact be solvent.  Therefore, the Debtor does not have standing to bring this claim.

### III.    EVEN IF IT WERE DETERMINED THAT VETS HAS STANDING, THE OBJECTION TO CLAIM MUST FAIL AS IT LACKS THE REQUISITE EVIDENTIARY SUPPORT

Even if the Court was to determine that VETS has standing to file this objection, the objection to Golf View's creditor claim also lacks the requisite evidentiary support.

1    In In re Garner, 246 B.R. 617, 620 (B.A.P. 9th Cir. 2000), the Court in discussing the

2    presumption of a proof of claim stated "[t]here is an evidentiary presumption that a correctly

3    prepared proof of claim is valid as to liability and amount.  The sources of this presumption lie

4    both in the Bankruptcy Code and in the Federal Rules of Bankruptcy Procedure."  Garner

5    further states, "The rules add that a proof of claim executed and filed in accordance with

6    the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and

7    amount of the claim. Fed.R.Bankr.P. 3001(f);[1] [fn omitted] *Diamant v. Kasparian (In re*

8    *Southern Cal. Plastics, Inc.),* 165 F.3d 1243, 1247–48 (9th Cir.1999); *Consolidated Pioneer*

9    *Mortg.,* 178 B.R. at 225; BARRY RUSSELL, BANKRUPTCY EVIDENCE MANUAL §

10   301.13 (1999)." Garner, supra at 620-621.

11

12       Pursuant to Local Bankruptcy Rule 3007-1(c)(1),

13       -"[A]n objection to claim must be supported by admissible evidence sufficient to
         overcome the evidentiary effect of a properly documented proof of claim executed and
14       filed in accordance with FRBP 3001.  The evidence must demonstrate that the proof of
         claim should be disallowed, reduced, subordinated, re-classified, or otherwise modified."
15

16       As further discussed in Garner, supra at 622-23:

17       "The mechanics of what it takes to rebut the presumption are driven by the nature of the
         presumption as "prima facie" *evidence* of the claim's validity and amount. The proof of
18       claim is more than "some" evidence; it is, unless rebutted, "prima facie" evidence. One
         rebuts evidence with counter-evidence."
19

20       In this case, VETS has failed to provide adequate evidence to rebut the proof of claim

21   and none to demonstrate that this claim should be disallowed.  In fact, the only alleged evidence

22   provided by VETS is that contained in the Declaration of Jose Pasco, which a majority of it is

23   objectionable (See, evidentiary objections concurrently filed herein).  Even the improperly

24   attached Summary Judgment Motion does not have any evidence included and is itself not

25   evidence.  At best, the Summary Judgment Motion is hearsay regarding alleged arguments of

26   the Debtor.  At most, Exhibit 2 could be treated as a request for judicial notice filed in another

27   lawsuit for purposes of noticing the existence of the Summary Judgment Motion that was filed

28

1    at one time in the Golf View Adversary and that various documents were filed, but not the truth

2    of matters asserted therein. See, McMunigal v. Bloch, No. C 10-02765 SI, 2010 WL 5399219,

3    *2 n. 1 (N.D Cal. Dec. 23, 2010).

4         It is well established in the Ninth Circuit that "[a]s a general rule, a court may

5    not take judicial notice of proceedings or records in another cause so as to supply, without

6    formal introduction of evidence, facts essential to support a contention in a cause then before

7    it." M/V American Queen v. San Diego Marine Construction Corp., 708 F.2d 1483, 1491 (9th

8    Cir. 1983); see also County of Stanislaus v. Pacific Gas & Electric Co., Case No. CV-F-93-

9    5866-OWW, 1995 U.S. Dist. LEXIS 21411, at *22-23 (E.D. Cal. Dec. 18, 1995) (judicial

10   notice taken of the fact that testimony was given before the Public Utilities Commission, but not

11   for the truth of the matters stated therein). Thus, the only alleged evidence before this Court

12   relating to this Objection is the unobjectionable portions of the Pasco Dec., which does not rebut

13   the Proof of Claim and the Objection should be overruled.

14

15   **IV.    RELEVANT STATEMENT OF FACTS RELATING TO THE PROOF OF**

16   **CLAIM**

17        Golf View filed for a Chapter 11 bankruptcy in the Central District of California –

18   Northern Division on February 22, 2019, as Case No. 9:19-bk-10291-DS ("Golf View

19   Bankruptcy") (RJN, Exhibit A, Docket No. 1). Golf View's primary asset was the property

20   identified as 67800-67884 McCallum Way, Cathedral City, California (APN 677-610-037-5)

21   (the "Property"). At the time of the filing of the Petition, the Property was in foreclosure by the

22   first priority lienholder, Keillor Capital, Inc. ("Keillor"). Declaration of Fred Brilman ("Fred

23   Dec.), paragraph 2; and Declaration of Trevor Brilman ("Trevor Dec."), paragraph 2.

24        On March 29, 2019, a Motion for Relief from the Automatic Stay ("Automatic Stay

25   Motion") was filed by Keillor in the Golf View Bankruptcy so it could proceed with the

26   foreclosure of the Property. The Automatic Stay Motion was continued to May 28, 2019, again

1    to June 4, 2019, then to June 25, 2019 and finally to July 2, 2019, when relief from the

2    automatic stay was granted.  (See, RJN, Exhibit A, Docket No. 22).  Fred Dec, paragraph 3; and

3    Trevor Dec, paragraph 3.

4        On or about April 3, 2019, in the Golf View Bankruptcy, Golf View filed an application

5    to employ Gary Keshishyan ("Keshishyan") and Pinnacle Estate Properties ("Pinnacle")

6    (collectively "Brokers") as its broker.  A copy of the application to employ Keshishyan and

7    Pinnacle and related documents are attached to the Proof of Claim attached to the Pasco

8    Declaration as Exhibit 1, pages 53-107 to the Objection.  (See also, RJN, Exhibit A, Docket No.

9    24; Fred Dec, paragraph 4; Trevor Dec, paragraph 4).

10   Within a couple of weeks of employing the broker, on or about April 15, 2019, VETS,

11   through its agent, Levis Pasco Obando ("Levis") submitted an offer to Golf View representing

12   that it would make an all-cash offer ("Offer").  Levis was also an agent at Pinnacle.  The Offer

13   clearly stated that the Offer was an **all-cash** offer without a financing contingency and the price

14   agreed to was $1,900,000 plus any cash deposit remaining at the City of Cathedral.  (Fred Dec.,

15   paragraph 5; Trevor Dec., paragraph 5).

16   The Addendum to the Offer was agreed to by Golf View and VETS, and among things,

17   VETS agreed to the following:

18   A.  Sale price was $1,900,000 plus a reimbursement for a $9,000 cash deposit.  (See

19       Footnote 1, supra, and Addendum, paragraph 2);

20   B.  Disclosed Golf View's bankruptcy and specifically stated the sale is contingent upon

21       entry of an Order of the Bankruptcy Court authorizing the sale. (Addendum,

22       paragraph 3);

23   C.  Escrow shall close 15 days after the Order approving the sale is entered. (Addendum,

24       paragraph 6, 7 and 16);

25   D.  The OFFER was an **all-cash offer without any financing, or other,**

10

1    **contingencies**.  (Addendum, paragraph 10);

2    E.  Any and all due diligence required by the Buyer was to be conducted before the

3    hearing.  (Addendum, paragraph 11).

4    A copy of the *Vacant Land Purchase Agreement and Joint Escrow Instructions* with the

5    Addendum is attached to the Pasco Declaration as Exhibit 1, pages 124-144 to the Objection.

6    (Fred Dec., paragraph 6; Trevor Dec., paragraph 6).

7

8    An escrow was opened on or about April 19, 2019 with Closing Agents, Inc.

9    ("Escrow").  (Fred Dec, paragraph 7; Trevor Dec, paragraph 7).

10    On April 24, 2019, Golf View filed its Motion to Approve Sale of Real Property of its

11    vacant land to VETS ("Sale Motion").  A copy of the Sale Motion is attached to the Pasco

12    Declaration as Exhibit 1, pages 153-202 to the Objection.  The motion was approved by Order

13    entered on June 4, 2019 ("Sale Order").  A copy of the Sale Order is attached to the Pasco

14    Declaration as Exhibit 1, pages 206-211 and the RJN as Exhibit F.  With the entry of the Sale

15    Order, escrow was required to be closed by **June 19, 2019**.  In addition, by its terms, the

16    proceeds of the sale were to be used to pay Property taxes, to pay off Keillor, the second priority

17    lienholder Scott Zundel ("Zundel"), the Franchise Tax Board was to be paid next, then a carve

18

19    out of $40,000 to the Estate and then payment to the third lienholder, who was to receive the

20    remaining proceeds up to its lien. (See also, RJN, Exhibits A, Docket Nos. 42 and 62 and

21    Exhibit F; Fred Dec, paragraph 8; Trevor Dec, paragraph 8).

22    By June 19, 2019, all contingencies had been met and/or waived.  A copy of the waiver

23    of the contingencies emailed to Golf View's project consultant on May 13, 2019 is attached to

24    Fred Dec. as Exhibit AA.  However, the Escrow did not close and, in fact, never closed.  Based

25    upon an alleged medical situation claimed by Pasco, VETS requested an extension to July 1,

26    2019 to close the escrow and agreed to increase the deposit by $7,500.  Keshishyan even sent a

27

28

1    text to Golf View stating that the $7,500 was being wired into escrow.  (Fred Dec, paragraph 9,

2    Exhibit BB; Trevor Dec., paragraph 9).

3         VETS, through Pasco, continuously represented that the escrow would imminently close.

4    VETS used medical issues with Pasco and his family to claim that they could not close yet.  To

5    maintain the ruse that they had the ability to pay the all-cash offer and provided bank statements

6    that purported to show that VETS had the money.  Golf View disputes the validity of those

7    statements (Fred Dec., paragraph 10, Exhibit CC; Trevor Dec., paragraph 10, Exhibit CC).

8

9         Yet, VETS just kept asking for extensions and did not close the escrow.  The Court

10   granted the lender relief from the automatic stay on July 2, 2019 (RJN, Exhibit G).  So the

11   Property would not be lost, Golf View released the $25,000 earnest money deposit to the lender

12   to buy VETS additional time to close the escrow as they requested.  VETS, through Pasco,

13   stated that they would pay a $100,000 for an extension –the check that they submitted bounced.

14   Then, when VETS asked again, Golf View only agreed to extend the escrow if VETS

15   understood that all damages would be sought if the escrow did not close.  VETS accepted the

16   extension, thereby waiving any purported limitation on liquidated damages. Even though the

17   check bounced on or about July 10, 2019, at the time the extension was discussed, all parties

18   thought the check was good.  Declaration of M. Jonathan Hayes ("Hayes Dec."), paragraph 5,

19   Exhibit DD; Fred Dec., paragraph 11; Trevor Dec., paragraph 11, Exhibits EE and FF.

20

21        The Escrow did not close on July 16, 2019 as represented, but VETS continued to

22   represent that it would close the Escrow.  By July 25, 2019, when things were getting dire Golf

23   View sent an email to Keshishyan that the events are going to "immediately become extremely

24   serious" based upon the Buyer defaulting on the court-ordered approved sale.  Trevor Dec,

25   paragraph 12, Exhibit GG; Fred Dec., paragraph 12.

26

27        VETS kept delaying the close of escrow and requesting extensions.   On or about July

28   27, 2019, Golf View's agent confirmed in an email that VETS requested another extension.

After multiple promises that money was deposited into the escrow for extensions and VETS/Pasco not performing and not closing the escrow, Golf View required $50,000 to be deposited. On August 2, 2019, Pasco caused to be wired on behalf of VETS the $50,000 for these extensions. (Fred Dec., paragraph 13; Trevor Dec., paragraph 13).

VETS obtained consent of Keillor to a three-week extension with the conditions that $33,000 was to be released to Keillor. By August 6, 2019, VETS refused to sign the release of the funds. The Property was foreclosed upon by Keillor on the afternoon of August 6, 2019. Even though the sale price by Keillor of $1,050,000 was less than the amount due to the first lienholder, the entire deed was extinguished. Golf View told VETS/Pasco that the foreclosure was imminent without the release of $33,000 to the lender, which would have only been credited to the sale upon closing, otherwise, it was non-refundable. Fred Dec, paragraph 14; Trevor Dec, paragraph 14; and Hayes Dec, paragraphs 6-8.

VETS was aware of the pending sale and knew that Golf View would be damaged in the failure to timely close it. VETS defrauded Golf View and its delays were a direct cause of Golf View's damages. All of the damages were known to VETS, and there was a Court order that authorized the sale of the Property and specifically set forth the expenditures from the all-cash sale. These damages were all out of pocket, contemplated and/or consequential damages of the failure to close the escrow. Fred Dec., paragraph 15; Trevor Dec., paragraph 15.

As such, Golf View was damaged, at least, as follows:

Failure to pay the second priority lienholder, $45,000;

Failure to pay the California Franchise Tax Board, $9,380.40;

Failure of Golf View to receive its carve out of $40,000;

Failure to pay the third priority lienholder the remaining sum of approximately $607,800.

Fred Dec, paragraph 16; Trevor Dec, paragraph 16.

1    In addition, and in reliance on the pending Escrow, Golf View incurred at least $2,500 in

2  dust control costs, $3,500 for fencing costs and $1,627.80 for trustee fees caused because of the

3  delay and failure to close the escrow.   The costs would have been allocated in the escrow, so

4  were a loss to Golf View.  In addition, Golf View lost the refund of the $9,000 dust control

5  bond.  The bond was being held by the City of Cathedral City, and would have been refunded

6  had the escrow closed.   All of the damages are collectively referred to as "Damages".   Fred

7  Dec, paragraph 17; Trevor Dec, paragraph 17.

8    There is no evidence regarding Golf View's monthly operating reports in the alleged

9

10  evidence, so the Court should not consider any such argument.  Regardless, not listing all of the

11  liabilities/Damages that were incurred on Golf View's monthly operating report is not indicative

12  of Golf View's Damages, because parts of the reports are on a cash rather than an accrual basis

13  and some of the damages were not fully discovered until after the reports were due.  (Trevor

14
  Dec., paragraph 19).
15

16    The $50,000 deposited into the escrow was not the earnest money deposit but was paid

17  for extensions that VETS received to close the escrow.   The additional and continued

18  misrepresentations were made after the initial time to close the Escrow had passed.   The

19  extensions of the Escrow were based upon the misrepresentation and were separate agreements

20  that altered and/or superseded any alleged limitation on damages. Fred Dec, paragraph 18;

21  Trevor Dec, paragraph 18.

22    On October 16, 2019, Golf View filed an adversary proceeding against various parties,

23  including VETS for breach of VETS' contract obligations to Golf View and/or for the

24  defendants (including VETS) defrauding Golf View relating to the escrow.   Trevor Dec,

25  paragraph 22.  The Golf View Adversary is still conducting discovery, and Pasco is attempting

26  to thwart the discovery process by raising improper objections to subpoenas (Brand Dec.,

27
  paragraph 7).
28

## V.    LEGAL STANDARDS RELATING TO VETS' CLAIM

### A.    THE LIQUIDATED DAMAGES PROVISION WAS WAIVED WHEN VETS ACCEPTED THE EXTENSION

After the $25,000 deposit was non-refundable and released to pay Keillor and the additional deposit of $7,500 was not paid to escrow as agreed, Golf View would only agree to extend the escrow by VETS agreeing to waive any damage limitations.  VETS accepted the extension to July 16, 2019 and afterwards knowing that the damages were no longer being limited. The provision specifically stated:

> "This Agreement of Debtor to extend the closing date of escrow to Tuesday 7-16, 2019, is made to aid the Debtor's mitigation effort to reduce the Debtor's damages incurred as a result of the Buyer's failure to timely close escrow and buy the subject property as originally agreed in the real estate purchase contract filed with the Bankruptcy Court. By executing the execution there is no intent on the part of the Debtor to herein waive or release any claims against any person or entity, all rights to which are expressly reserved and retained by the Debtor.  Nor is there any waiver or release."

As such, the liquidated damage provision was waived by the acceptance of the terms of the extension.   Thus, Golf View is entitled to all damages that it incurred, including, but not limited to, all damages described in the Sale Order.  California Civil Code Sections 3307 and 3333 (for fraud).

### B.    EVEN IF THE LIQUIDATED DAMAGE PROVISION WAS NOT WAIVED, THERE IS A DISPUTED FACT ISSUE REGARDING THE CHARACTERIZATION OF THE $50,000

VETS only deposited the original $25,000 for the earnest money deposit ("EMD").  VETS, through Pasco, represented to Golf View that it would deposit $7,500 to the EMD to obtain the first extension, but it never did so (although the co-defendants in the Golf View Adversary claimed it was wired into the escrow).  In a court appearance on July 2, 2019 where the Court granted the relief from stay, Golf View agreed to have the $25,000 EMD released to Keillor so the extension would be granted.  Around that same time, since VETS still requested more time to extend the escrow, VETS paid into escrow (Pasco signed the check) a payment of

1  $100,000 for a further extension. The check bounced. On or about August 2, 2019, VETS later

2  deposited the sum of $50,000 to obtain an extension. However, VETS refused to execute the

3  instructions to release the money, even though Keillor authorized the extension if $33,000 of the

4  monies were released to it. Fred Dec., paragraphs 9-14; Trevor Dec., paragraphs 9-14, Exhibit

5  EE; Hayes Dec., paragraph 7.

6

7  Nonetheless, the money deposited was never meant to be included in the EMD, so there

8  was no reason to execute any instructions. It was always represented and understood that the

9  $50,000 was for the extensions of time. At the bare minimum, the money was a partial

10  replacement of the extension fee that VETS previously bounced (the $100,000 check).

11  When the party who has not performed requests an extension of the time for

12  performance, the payment of money to the other party for an extension of time is separate

13  consideration for the extension and does not constitute liquidated damages even though the

14  amount paid may apply toward the purchase price if performance is completed. Therefore, the

15  party receiving the extension consideration is entitled to retain the funds if the escrow does not

16

17  close. §6:25. Right to terminate escrow for failure to perform, 2 Cal. Real Est. §6:25. (4th Ed.);

18  See also, Horowitz v. Noble, 79 Cal. App. 3d. 120 (Ct. App. 1978).

19  After he withdrew his Release Motion, Pasco is once again claiming the $50,000 belongs

20  to him despite the fact on December 10, 2020, he executed the documents listing the $50,000

21  extension payment as an alleged asset of the VETS estate. This is supported by Pasco's

22  execution on behalf of VETS on or about September 26, 2019, when he attempted to have the

23  $50,000 paid for the extension returned to VETS by sending an Addendum to the Escrow.

24

25  VETS specifically stated in the document that "[o]n August 2, 2019, buyer wired more money

26  ($50,000) into escrow… (emphasis added)". Debtor did not agree to the Addendum to Escrow

27  and did not release the funds. (Trevor Dec., paragraph 21). Pasco, who signed the documents

28

1    as a representative of VETS did not then contend the money belonged to anyone else other than

2    VETS.   This is just another contradiction by Pasco that must fail.

3        As such, it is a disputed fact issue regarding whether or not the $50,000 that was wired

4    into the escrow was part of the EMD or was payment for the extensions.

5
     ### C.    WHICH CODE SECTION REGARDING DAMAGES IS APPLICABLE IS
6    ### A TRIABLE ISSUE OF FACT

7        Golf View may recover damages for its loss of the Property from the foreclosure sale.  In

8    their Objection, VETS relies on the wrong statute regarding Golf View's recoverable damages.

9    The controlling statute is <u>California Civil Code</u> Section 3333, not 3343. The predicate fact for

10   applicability of the more limited measure of damages under <u>Civil Code</u> section 3343 (that title

11   be transferred) is not met in this case.  Even if Civil Code section 3343 applied, Golf View

12   would still be entitled to recover the damages sought, including for its losses in excess of

13
14   $700,000.

15       The case cited by VETS does not involve a sale that failed and the application of <u>Civil</u>

16   <u>Code</u> Section 3343 is flawed.   As to whether the statute is applicable or not creates a disputed

17   fact issue.

18
     ### D.    EVEN IF CALIFORNIA CIVIL CODE SECTION 3343 APPLIES GOLF
19   ### VIEW WOULD BE ENTITLED TO ITS DAMAGES

20       VETS miscite <u>Civil Code</u> Section 3343 when it claims that the only form of damages

21   that a seller can receive from the fraud of a buyer is "out of pocket damages."  This

22   misconstrues the statute and the case law.  In fact, contrary to VETS' argument, "out of pocket"

23   damages are not the exclusive measure of damages.

24
25       The sale of the Property to VETS was conditional upon the approval by the Court of the

26   sale. Thus, the Sale Order with the breakdown of all of the payments to the parties became part

27   of the sale transaction.  VETS had actual knowledge of the expenses that were to be paid.  When

28   the sale of the Property by foreclosure occurred, Golf View received nothing, except for the first

lienholder's claim being extinguished.  RJN, Exhibit G.

In fact, Civil Code Section 3343 states multiple way a seller can recover its fraud damages as follows:

> "(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following:
>
> (1) Amounts actually and reasonably expended in reliance upon the fraud.
>
> (2) An amount which would compensate the defrauded party for loss and us and enjoyment of the property to the extent that any such loss was proximately caused by the fraud.
>
> (3) Where the defrauded party has been induced by reason of the fraud to sell or otherwise part with the property in question, an amount which will compensate him for profits or other gains which might reasonably have been earned by the use of the property had he retained it."

As discussed in <u>Channell v. Anthony</u>, 58 Cal. App. 3d. 290, 212:

> "The 1971 amendment to section 3343[7] took the form of an Addition to the 'out of pocket' rule. The statute had previously permitted recovery of 'additional damages', but the **<u>1971 amendment enumerated specific types of consequential damages which are included within the term 'additional damages.'</u>** In the case of a seller, as in the case before the court, the defrauded victim is **<u>entitled to recover not only the difference between the actual value of that with which he parted and the actual value of that which he received (out-of-pocket) but also Any additional damage arising from the particular transaction Including any of the following: 1. amounts expended in reliance upon the fraud; 2. amounts compensating for loss of use and enjoyment of the property due to the fraud; and 3. an amount which would compensate him for the profits or other gains by the use of the property had he retained it</u>**. (emphasis added)."

The defrauded party may recover consequential damages under even though it has as neither alleged nor proved general out-of-pocket damages (amount by which the consideration paid exceeded the value of the property). "The only effect of [plaintiff's] failure to show traditional 'out-of-pocket' loss is the necessity that a nullity be added to the amount shown to have been sustained as consequential damages." [<u>Stout v. Turney</u>,  22 C3d 718, 729-730, (1978) see <u>All. Mortg. Co. v. Rothwell,</u> supra at 1241, fn 5; <u>Las Palmas Assocs. v. Las Palmas Center</u>

1    *Assocs.*, 235 CA3d 1220, 1254, (1991).  Nonetheless, injury to Golf View's "expectancy

2    interest" is compensable under Civ.Code. § 3343 in the form of reasonably anticipated lost

3    profits or gains (See, Civil Code Section 3343(a)(3); Stout v. Turney, 22 C3d 718, 726; see All.

4    Mortg. Co. v. Rothwell, supra at 1240-1241; Fragale v. Faulkner, 110 CA4th 229, 236 (2003).

5            In addition, all of the additional expenses paid because of the failure of VETS to close

6    the escrow were out of pocket expenses.  As discussed below, VETS cannot offset them against

7    the EMD.

8            Although the measure of damages pursuant to Civil Code Section 3343 is out of pocket

9    damages rather than benefit of the bargain damages, here, the sale of the Property by Keillor

10   was a directly foreseeable consequence of VETS' fraud.  Golf View contends that transfer

11   occurred on the sale by foreclosure where only the first lienholder was paid.  Thus, all other

12   damages, specifically the $40,000 carve out were proper out of pocket damages.  All of this was

13   proximately caused and known by VETS since the Sale Order was part of the purchase

14   agreement.

15           In addition, and in reliance on the pending Escrow, Golf View incurred at least $2,500 in

16   dust control costs, $3,500 for fencing costs and $1,627.80 for trustee fees caused because of the

17   delay and failure to close the escrow.  The dust control and fencing costs were incurred in May

18   2019 for services for six months, and the expenses would have been prorated in the Escrow.  In

19   addition, Golf View lost the refund of the $9,000 dust control bond.  The bond was being held

20   by the City of Cathedral City, and would have been refunded had the escrow closed.  Moreover,

21   the EMD was used for an extension and not for any of Golf View's losses.  Golf View used the

22   $25,000 to Keillor in order to obtain the extension specifically so the sale with VETS could

23   close.  As such, Golf View is also entitled to the $25,000 paid out by Golf View to obtain the

24   extension of time for VETS.  (Fred Dec., paragraph 17; Trevor Dec., paragraph 17).

25           Maintenance costs for taking care of the Property after the breach is certainly

consequential damages.  The damages would not have been incurred but for the failure of VETS

to close the escrow.   These are both out of pocket losses and/or consequential damages, both of

which are recoverable under <u>Civil Code</u> Section 3343. (See, <u>All. Mortg. Co. v. Rothwell</u>, supra

at 367).   The damages were accrued as administrative expenses in protecting the Property and

VETS is responsible for the payment of the fees.

In addition, Golf View contends that it is entitled to punitive damages if it prevails on its

claims.  (Fred Dec., paragraph 19; Trevor Dec., paragraph 20).

As such, there are disputed fact issues Golf View's damages.

**VI.    IF THE COURT IS NOT INCLINED TO OVERRULE THE OBJECTION FOR LACK OF STANDING, OR FAILURE TO PROVIDE EVIDENTIARY SUPPORT, THEN THE OBJECTION SHOULD BE DENIED AND/OR DISMISSED FOR FAILURE TO FOLLOW BANKRUPTCY RULE 7056 AND LOCAL RULE 7056-1.**

The Objection looks and acts as a Motion for Summary Judgment ("MSJ"). It even

(improperly) attaches a previously filed MSJ apparently as some type of exhibit to try and

present evidence.  The Court should therefore consider it as one.

That sets up a contested matter under the Rules.  Bankruptcy Rule 9013(c) therefore

applies and states that Bankruptcy Rule 7056 is applicable which brings into play LBR 7056-1.

There has not been any compliance with LBR 7056-1.  The "Motion" was filed on

August 16, 2021 and therefore 42 days' notice has not been given; there is no statement of

"uncontroverted facts"; no conclusions of law,

For this reason alone, the Motion (or Objection) should be denied and/or overruled.

**VII.    IF THE COURT IS NOT INCLINED TO OVERRULE THE OBJECTION FOR LACK OF STANDING, FAILURE TO PROVIDE EVIDENTIARY SUPPORT, OR FAILURE TO FOLLOW BANKRUPTCY RULE 7056 AND LOCAL RULE 7056-1, THEN GOLF VIEW REQUESTS AN EVIDENTIARY HEARING WHETHER ITS CLAIM SHOULD BE ALLOWED**

"The filing of an objection to a proof of claim creates a dispute which is a contested

matter within the meaning of Bankruptcy Rule 9014, and must be resolved after notice and an

1    opportunity for hearing upon a motion for relief." <u>In Re Lundell</u>, 223 F. 3d 1035, 1039 (9th Cir.

2    2000.)

3        Section 501(b) of the Bankruptcy Code provides that if an objection to a claim is made,

4    it must be determined by this Court "after notice and a hearing." Bankruptcy Rule of Procedure

5    9014(a) provides that in "contested matter" there must be "reasonable notice and opportunity

6    hearing...[for]...the party against whom relief is sought..." Subdivision (d) provides that

7    "testimony of witnesses with respect to disputed material factual issues shall be taken in the

8    same manner as testimony in an adversary proceeding." The California courts have held that a

9

10    Bankruptcy Court determination of a claim has a preclusive effect only after a "contested

11    evidentiary hearing." <u>Wolkowitz v. Redland Insurance Co.</u>, 112 Cal.App. 4th 154, 166 (2003).

12        If the Court does not simply overrule the Objection, then Golf View is requesting that

13    the hearing be a Status Conference (Local Bankruptcy Rule 3007-1) and that an evidentiary

14    hearing be held to determine the damages.

15

16                        **VIII.    <u>CONCLUSION</u>**

17        For the foregoing reasons, the Court should overrule/deny the Objection.  If the Court is

18    not inclined to overrule/deny the Objection, then Golf View should be entitled to an evidentiary

19    hearing.

20

21    Dated:  September 8, 2021            LAW OFFICES OF ROBERT M. YASPAN

22

23

24    By_____

25                        ROBERT M. YASPAN
                        DEBRA R. BRAND
26                        Attorneys for Creditor Golf View Lane Limited
                        Partnership

27

28

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 21700 Oxnard Street, Suite 1750, Woodland Hills, CA 91367.

A true and correct copy of the foregoing document entitled: OPPOSITION TO DEBTOR VALLEY ENTERPRISES, T.S. INC.'S OBJECTION TO GOLF VIEW LANE LIMITED PARTNERSHIP'S PROOF OF CLAIM NO. 8  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On September 8, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Julian K Bach**    Julian@Jbachlaw.com, julianbach@sbcglobal.net
- **Michael Jay Berger**    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Kelli M Brown**    kbrown@mclaw.org, CACD_ECF@mclaw.org
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **Greg P Campbell**    ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- **Russell Clementson**    russell.clementson@usdoj.gov
- **Joseph C Delmotte**    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com
- **Brian S Edwards**    brian.edwards@fnf.com, christine.hipp@fnf.com
- **Arnold L Graff**    agraff@wrightlegal.net, bkudgeneralupdates@wrightlegal.net,jcraig@wrightlegal.net
- **Erica T Loftis Pacheco**    bknotifications@ghidottiberger.com
- **Lane M Nussbaum**    lnussbaum@nussbaumapc.com, info@nussbaumapc.com
- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- **Anthony N Ranieri**    a1andb2@aol.com
- **Matthew D. Resnik**    matt@rhmfirm.com, roksana@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- **David Seror**    dseror@bg.law, ecf@bg.law
- **Tamar Terzian**    tterzian@bg.law, ecf@bg.law
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Thomas B Ure**    tbuesq@aol.com, urelawfirm@jubileebk.net;tom@ecf.courtdrive.com
- **Diane C Weil (TR)**    dcweil@dcweillaw.com, DCWTrustee@dcweillaw.com,dweil@iq7technology.com,alopez@dcweillaw.com;ecf.alert+Weil@titlexi.com
- **Reilly D Wilkinson**    rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com
- **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**2.  SERVED BY UNITED STATES MAIL**:  On September 8, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Honorable Martin R. Barash**
**United States Bankruptcy Court**
**Central District of California**
**21041 Burbank Boulevard, Suite 342 / Courtroom 303**
**Woodland Hills, CA 91367**

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)* _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 8, 2021 | Tatyana Menachian | /s/ Tatyana Menachian |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                        **F 9013-3.1.PROOF.SERVICE**